# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                       **Case No. 10-CR-48**

**ALEXANDER DeJESUS**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Alexander DeJesus pleaded guilty to two counts of possession of firearms as a felon, contrary to 18 U.S.C. § 922(g)(1), and I set the case for sentencing. In imposing sentence, the district court must first calculate the advisory sentencing guideline range, then determine the sentence on consideration of all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

## I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 14, U.S.S.G. § 2K2.1(a)(6)(A), then added 2 levels because the offense involved five firearms, § 2K2.1(b)(1)(A), 2 levels because four of the firearms were stolen, § 2K2.1(b)(4)A), and 4 levels because defendant possessed four of the firearms in connection with another felony offense, i.e., a burglary in which the guns were taken, § 2K2.1(b)(6)(B) & cmt. n.14(B). The PSR then subtracted 3 levels for acceptance of responsibility, § 3E1.1, for a final offense level of 19. Coupled with defendant's criminal history category of IV, level 19 produced an imprisonment range of 46-57 months. Neither side objected to these calculations, which I adopted accordingly.

## II.  SECTION 3553(a)

**A.     Sentencing Factors**

Section 3553(a) directs the court, in determining the particular sentence to be imposed, to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  Id.  While the guidelines serve as the starting point and initial benchmark in making this determination, Gall v. United States, 552 U.S. 38, 49 (2007), the district court may not presume that a guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009).  Rather, the court must make an independent determination, without any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007), taking into account the types of sentences

2

available, the relevant § 3553(a) factors, and the arguments of the parties, see Gall, 552 U.S. at 49-50.

**B.     Analysis**

   **1.     The Offense**

On November 24, 2009, an employee of Badger Guns contacted the West Milwaukee Police Department and the ATF to report a suspicious firearm transaction. The salesman told agents that he had just transferred a Walther model PK380 pistol to a Tiana Moore. The salesman grew suspicious of the transaction based on Moore's interactions with a man during the sale and when she picked up the gun. She left the store in a vehicle registered to defendant.

ATF agents spoke to the employee who assisted Moore, and he stated that he heard her ask the man with her which gun he thought she should buy, and he said the gun was for her. Surveillance footage shows the man picking up the Walther firearm and examining it. The clerk stated that while Moore filled out the ATF Form 4473, he told her she could not buy a gun for anyone else, and she said the gun was for her.

On November 30, 2009, defendant, Moore's live-in boyfriend, was arrested in possession of the Walther pistol. Earlier that day, a burglary occurred in Dane County, Wisconsin. An eye witness reported seeing three people carrying guns and a television out of the target residence; the witness identified the car and license plate. The car was registered to defendant in Elm Grove, Wisconsin. Elm Grove police conducted surveillance and observed the vehicle return, defendant driving, with two additional passengers, a male and a female. After officers saw the men carry the guns and television into the residence, they obtained a

3

search warrant.

Prior to execution of the warrant, defendant left the residence in the vehicle used in the burglary. Officers conducted a traffic stop and saw defendant make furtive movements. Officers removed defendant from the vehicle and asked if he was carrying any weapons. Defendant said his girlfriend's firearm was in between the seats of the car. Officers found the Walther 380 pistol wedged between the seats.

During the execution of the search warrant at defendant's residence, officers found four stolen long guns, a stolen television, a gun case for a Walther pistol, and some unidentified pills. The guns were identified as a Browning single shot 12 gauge shotgun; a Winchester 30-30 rifle; a Stevens 20 gauge bolt action shotgun; and a Browning 12 gauge shotgun. The guns and television were all stolen on November 30, 2009 from the Dane County residence. Officers arrested Miguel Oquendo and Tracy Leisen at the house.

After being advised of her rights, Leisen admitted participating in the Dane County burglary with her boyfriend, Oquendo, and his half-brother, defendant. She said defendant carried the television, Oquendo carried the guns, and she stayed in the car. She also admitted seeing defendant with a pistol in the past but stated that he did not have it with him that day.

After being advised of his constitutional rights, defendant gave officers a number of stories about what happened that day. He stated that he drove Tracy and her boyfriend, whom he denied knowing, to the house so she could pick up her belongings. Defendant said his prints may be on the guns because he helped carry them into his house. Defendant denied it was a burglary. He also stated that the gun found in his car belonged to his girlfriend, Tiana Moore. Defendant admitted being at Badger Guns with her and giving her the money to buy the gun. He said the gun was her birthday present. Defendant further admitted handling the

4

gun on a few occasions, but said Moore is the one who left it in the car.

Officers spoke to Moore, who said she left her gun on the computer cabinet in her house, and defendant must have taken it with him that day. Moore stated defendant called her while he was being stopped by police and told her to come and pick up the car and the gun. Moore stated that she purchased the gun for herself for protection and target shooting. Moore admitted that defendant was with her when she purchased the gun, but stated that she bought the gun for herself for her birthday. Moore also admitted that defendant handled the gun in the store. Moore knew defendant was a convicted felon, and he had access to the gun because she did not hide it from him. Criminal record checks revealed defendant's prior Illinois felony convictions for burglary and related offenses and Florida felony conviction for carrying a concealed firearm.

In his statement to the PSR writer, defendant expressed remorse for engaging in criminal activity. He stated that he was doing a favor for his brother, by giving him and his girlfriend a ride to a residence in Dane County. He denied knowing they were stealing items from the home, thereby participating in a burglary. Defendant admitted being stopped by police and having his girlfriend's firearm in the car. He stated that in the future he was committed to focusing on his family and those positive relationships in his life.

### 2. The Defendant

At age thirty-six, defendant had a prior record for drug possession in 1995; possessing a stolen car, burglary, and possession of burglary tools in 1995; carrying a concealed firearm in 1995; marijuana possession in 2001 and again in 2002; disorderly conduct in 2008; and reckless driving in 2009. He also had a burglary case pending in Dane County Circuit Court arising out of the events set forth above. Oquendo was convicted of theft and felon in

5

possession and sentenced to 18 months' prison for his involvement. Defendant also had a carrying a concealed weapon case pending in Waukesha County Circuit Court based on the discovery of the gun in his car when he was pulled over.

Defendant had been in a relationship with Ms. Moore for about three years. She had a child, age three, whom defendant had raised as his own. Ms. Moore remained supportive. Defendant also had four children from a previous relationship, ages thirteen, twelve, ten, and eight, who lived with their mother. Defendant saw them twice monthly.

Defendant was involved in a serious car accident in 1998, resulting in a fractured pelvis, ruptured spleen, and back injury. He reported that he continued to experience constant lower back pain and occasional numbness in his right leg. However, he received no further medical treatment or pain management until 2011, as described in ¶¶ 81-82 of the PSR and the medical records he submitted prior to sentencing.

Defendant also had a serious problem with substance abuse, including heroin, which resulted in the revocation of his bond in this case. (PSR ¶¶ 87-95.) There appeared to be an unfortunate connection between defendant's chronic pain and the substance abuse, as his use of prescribed Oxycodone put him at risk for relapse. He also violated the conditions of the in-patient treatment program I ordered him to complete, including a positive test and failure to return from a recreational pass. (PSR ¶¶ 7 & 94.)

Defendant admitted that he was using heroin during the time frame of the instant offense and believed that his heroin use affected his involvement, as he was not thinking rationally and made a poor decision to assist in the Dane County burglary. He expressed an interest in continuing with substance abuse treatment in the future.

Defendant also needed to complete his education. He was expelled from school for

6

fighting and had not earned a GED, although he expressed an interest in doing so and in taking college courses in business management. He had experience as a forklift driver and compiled some work record, as set forth in ¶¶ 98-103 of the PSR, but mostly short-term jobs.

Defendant submitted a letter from Deborah Conta, a forensic social worker, which summarized his medical issues and treatment. However, it did not appear that he was totally up front with Ms. Conta regarding his drug use: as detailed in the PSR, he tested positive for substances other than prescribed medications while on bond in this case, and Conta could not verify any prescription for morphine. Further, medical records dated August 22, 2011, and September 19, 2011, reported that defendant experienced a recent acute flair in back pain from working two jobs, causing him to more frequently use his prescribed medication. However, the PSR did not substantiate him working two jobs – or any jobs – at that time. While I agreed that defendant made some progress in dealing with his substance abuse, as verified in part by his counselors (PSR ¶ 93), it was not clear that he was being totally candid – with himself or others – about his problem.

### 3. The Sentence

The guidelines called for a term of 46-57 months, and I agreed that a prison sentence was necessary in this case. The offense was serious, aggravated by the burglary and theft of firearms, requiring prison to provide just punishment. Prison was also needed to deter, as the more lenient treatment defendant received in previous cases failed to correct his behavior. Defendant's suggestion of probation was insufficient given the seriousness of the offense, his prior record, and his poor performance on supervision in this and prior cases.

The government recommended 48 months, but I found that a sentence somewhat below the guideline range sufficed. First, although it did not technically amount to double counting,

7

the enhancements for stolen firearms, number of firearms, and possessing the firearms in connection with another felony offense, i.e. the burglary in which the firearms were taken, arose out of essentially the same conduct. A total enhancement of 8 levels overstated the severity of these offense conduct factors. I also accepted that defendant did not initiate the burglary; his brother (and perhaps Leisen) bore greater responsibility.

Second, criminal history category IV somewhat overstated the seriousness of defendant's record. In the past ten years, his record consisted only of two simple possession cases from 2001 and 2002, and non-criminal disorderly conduct and reckless driving cases in 2008 and 2009 (neither of which scored points). Defendant initially received sentences of 1 year probation on his 1995 possession and burglary cases, which scored points only because he was revoked and sentenced to prison in 2005, apparently because he absconded, moving out of state without permission. In any event, even these more serious cases were in the remote past. Further, the possession case involved .9 grams of cocaine, and the burglary case his possession of and entry into a stolen car. These are not the worst felony offenses I have seen.

Under all the circumstances, I found a sentence of 24 months sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence provided sufficient punishment, deterrence, and public protection, while acknowledging the guidelines' overstatement and the positives in defendant's character and conduct discussed above.

### III. CONCLUSION

Therefore, for these reasons and those stated on the record, I committed defendant to the custody of the Bureau of Prisons for 24 months on each count concurrent. Based on his financial situation, I determined that he lacked the ability to pay a fine and so waived the fine.

8

Upon release, I ordered him to serve 3 years of supervised release. I selected the maximum supervision term to ensure monitoring, treatment, and legitimate employment. The conditions of supervision, and other terms and conditions of the sentence, are found in the judgment.

Dated at Milwaukee, Wisconsin, this 25th day of November, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge